Appellant ready to proceed. You may. May it please the Court. The Meyer Court for Appellants. The issue in this case is the meaning of the term limited partner in Section 1402A.13 of the Internal Revenue Code. That section exempts a limited partner's distributive share of partnership income or loss, but it does not exempt guaranteed payments for services paid to that partner. Because a limited partner is exempt from self-employment taxes on the distributive share, there is a parallel provision in Title 42 involving the Social Security Administration that also exempts a limited partner's distributive share from eligibility for Social Security benefits. Now, Congress did not define the term limited partner, either in the Internal Revenue Code or in the Social Security Administration provisions, and there is no federal definition. Therefore, the term must be given its ordinary meaning. This Court looks to dictionary definitions to determine the ordinary meaning of a term at the time of enactment. Dictionary definitions in 1977 defined a limited partner as a partner whose liability to creditors of the partnership is usually limited to the amount of capital he has contributed. The Social Security Administration, in a regulation promulgated in 1978 and finalized in 1980, interpreted limited partner for purposes of the parallel provision in Title 42. The Social Security Administration also defined a limited partner as one with limited liability. Specifically, the regulation instructs that you are a limited partner if your financial liability for the obligations of the partnership is limited to the amount of your financial investment in the partnership. Now, the IRS points to the sentence right after that in support of its position that limited partner means a passive investor. That sentence says that generally you will not have to perform services or control the partnership, but generally you will not have to does not mean you can't. And the IRS itself, in 1978, defined limited partner as one whose potential personal liability for partnership debts is limited. And the IRS remained consistent for decades in this definition, for over 40 years, including the years in issue in this case, 2014 to 2016. During those years, the Partnership Income Tax Return Instructions defined a limited partner as a partner in a partnership formed under a state limited partnership law whose personal liability for partnership debts is limited to the amount of money or other property contributed. While IRS instructions are not binding, the Supreme Court in Bittner recognized that when the government has repeatedly issued guidance to the public at odds with the interpretation it now asks the court to adopt. That's one more reason that the government's current position may not be the best view of the law. Now, Siri?  So if we agree with your position, this would be a state-by-state assessment? In other words, it would be different depending on what state you're in? Is that a correct statement of the law as you appreciate it? MS. HENDRICKS.  So uniformity is probably overstated by the government because of the widespread adoption of uniform partnership laws. However, even if there was variation among the states, federal tax law accepts that variation because it frequently looks to state law to determine the legal interest and rights.  Is there any downside? And this is contrary to your position, but candidly, is there any downside to doing this on a state, to defining the term on a state-by-state basis pursuant to state law?  HENDRICKS. No, we don't see any downside, Your Honor. It is a common aspect of federal income tax law. I think in our briefs we cite two cases involving what it means to be legally separated. In the Third Circuit, applying Pennsylvania law found that a couple was not legally separated. On virtually identical facts, the Second Circuit found that a couple was legally separated applying Florida law. Now, Serious Solutions, the parties have stipulated, is a state law limited partnership and that its partners were state law limited partners, and that's on pages 2537 to 2538 in the record. Now, I'd like to turn now to the tax court's decision and then the IRS's arguments in its brief because they are different. The tax court erred in interpreting limited partner as such to mean functioning as a passive investor. As such does not mean functioning as. Such is a pointing word that must refer to a clear antecedent. So limited partner as such just means limited partner as a limited partner. It serves to distinguish the distributive share received by a limited partner as a limited partner from a distributive share it could have received as a general partner. Both in 1977 and today, a limited partner could be both a general partner and a limited partner. The as such makes clear that the distributive share of the limited partner is exempt, but the distributive share of the general partner is not. The tax court also erred because its decision renders the guaranteed payment carve out meaningless. If a limited partner that actively participates in the partnership is not a limited partner for purposes of the exception, then there is no reason for the guaranteed payment carve out. Now, the IRS seeks to give the guaranteed payment carve out meaning under a spectrum or continuum argument that the passive investor test is applied on a continuum so you could provide some services in exchange for a guaranteed payment, but not enough to disqualify you from passive investor status. But there's no support in the statutory language for a continuum or a spectrum test. And this highlights how unworkable the IRS's test is. There is no guidance as to how many hours would disqualify you from being a passive investor. Taxpayers would have no way of knowing where they fall on this spectrum and how to complete their tax return. Instead, giving limited partner its ordinary meaning is a bright line test that's easy for taxpayers to apply. That might be true in, I can understand how there could be hard cases, but wouldn't it be enough to say this isn't a hard case? I mean, these limited partners are the ones managing this company, right? So I would think you could write a rule that would say whatever the standard is, it can't be what these partners are doing because they're working full time, managing actively the company. What would be wrong with that rule? Right. Well, these partners, everything that they did does actually not count as control under Delaware law. So it does not disqualify them from limited partner status. Under Delaware law. Under Delaware law. Correct. And what, I mean, the IRS takes the position that there's no other form of partnership or LLC for that matter that would allow you to do what these partners did and avoid this employment tax. I don't think that the IRS takes the position that these partners have somehow violated their limited liability under state law. I think their position is that to the extent you actively participate, even if it's allowed and permissible under state law, you are not a passive investor and limited partner means a passive investor. Well, they, they, I take their position to be that there has to be some federal content to this rule. Right. There has, I mean, the federal tax, yes, federal taxes and federal tax rules often incorporate or rely on or make reference to or interdependent with state law. But at the end of the day, it's still a federal rule, right? That's right. That's right. And we believe that under the federal tax law, you would give the term its ordinary meaning at the time of enactment. And the ordinary meaning of the time of enactment is a state law limited partner with limited liability. But at the time of enactment in the 1970s, was there a set of circumstances where you could be, where you could have a limited partnership that was managed exclusively by five limited partners? Yes. In fact, one of the cases cited in the amicus brief, Frigidaire, has that exact situation where you have, because at that time you could be both a general partner and a limited partner and you could manage and control the partnership in your capacity as a general partner, but maintain your status as a limited partner and limited liability. And so, as I understand Frigidaire, what would happen is that the general partnership distribution, that would be taxed in the normal way, the full self-employment tax, but the limited partners would not? That's correct. The share allocated to the general partner would be subject to self-employment taxes, but the limited partner share would not. So could you, in 1970s, have a general partnership, or sorry, a limited partnership where the general partner distribution would be, say, 0.00001%, and then the other 99-point-whatever percent would all be distributed to the LPs and hence avoid the tax? Yes. I think as long as that general partner has a sufficient interest to be considered a partner for federal income tax purposes, then yes, you could. But it's basically zero. It rounds to zero. Yeah. I think there's a question as to whether 0.0001% is sufficient to constitute a partner for federal income tax purposes. But the tax court also erred in relying on the legislative's history when the statute is unambiguous. This court disfavors consulting the legislative history when the statute is unambiguous. Now I'd like to turn to the IRS's argument, which they do also urge a passive investor test, but they do not argue for the tax court's statutory construction. Their passive investor test is based on dictionary definitions, case law, and I would consider or characterize as a policy argument. So first the dictionary definitions. Not one of the dictionary definitions cited by the IRS says limited partners can't participate. Instead they all define a limited partner as one with limited liability. The IRS argues, however, that the definition of general partner, which as one who controls or participates in the business, the negative implication is that a limited partner cannot. But that is not the case in 1977. This court needs to look no further than the language in 1402A.13, which makes clear that Congress was aware that limited partners can participate in the partnership, but only exempted guaranteed payments for services from this exception. In addition, this court's decision in Stafford v. United States, which involved a limited partner, who was also a general partner, who provided significant services to the partnership almost a decade before 1402A.13 was enacted. And finally, Delaware law in 1977, as well as other states, allowed a limited partner to participate in the partnership. Turning to the case law the IRS cites, the case law all involves the control test, not a passive investor test. While a limited partner may not control the partnership under state law, a limited partner may actively participate in the partnership. I think it's important to note that the IRS does not contend that the limited partners have controlled the partnership such that they've lost their limited liability. And that's because the safe harbors in Delaware law in 1977 and today would have treated all of the limited partners' activities as not constituting control. And finally, I'd like to turn to the IRS's policy argument. And the policy argument is that a distributive share of an active limited partner is income from services and therefore should be subject to self-employment tax. A distributive share is not income from services. A distributive share is the partner's share of the partnership's income or loss, the partnership's as a whole. A distributive share is not tied to hours worked or revenue generated. And it's also just a share, an allocation. It's not a payment. By contrast, a guaranteed payment for services is what it sounds. It's an actual payment. It's consideration for services. And under Section 707C, it is payable without regard to the income of the partnership, which means regardless if the partnership is doing well or the partnership is doing poorly, the payment is made. By contrast, a distributive share, a partner could contribute significant services throughout the year and at the end only be allocated a loss. Now, I'd like to turn to one final argument with the IRS, which is this is not a question of state law trumping federal law. We touched on this earlier with response to your question, Judge Engelhardt. But there is no federal definition of limited partner. So Congress must have intended the ordinary meaning to apply. And the ordinary meaning of that term requires us to look to the interest created under state law. And this is not unusual. The Supreme Court and Burnett v. Harmel recognized that the state law creates legal interest, but the federal statute determines when and how they should be taxed. A state law frequently applies to determine legal interest and rights such as marriage, divorce, the enforceability of a contract. And this Court and union bankers consulted Texas law to determine whether a corporation had the right to acquire shares and was therefore subject to the stamp tax. So it's entirely consistent with general federal income tax principles. And as we said, this does not give rise to a concern about a lack of uniformity. All state law limited partners would be treated the same. Due to the widespread adoption of uniform partnership laws, there is not a concern that there will be variation. But even if there was variation, as we discussed earlier, that is accepted in federal income tax law. And with that, I reserve my remaining time. If there are no further questions. Thank you, Counsel. Good morning, your honors. My name is Paul Lulis from the Department of Justice, appearing on behalf of the Commissioner of Internal Revenue. May it please the court, in 1977, limited partnership was commonly understood to have two defining characteristics. First, was limited liability on behalf of limited partners. And second, was limited power to act. Sirius's argument focuses solely on the first and completely ignores the second. Sirius's dictionary only approach to statutory interpretation is wrong. The Supreme Court has admonished that the meaning of the terms in a statute are determined by consulting the context, structure, history, and purpose of the provision at issue. This includes the specific context in which the language is used and the broader context of the statute as a whole. All of these factors here point in the same direction. Why did the IRS not interpret this provision the same way from 1977 to like whatever, 2015? What changed in the IRS's view? Your honor, I do not think that there is any change in the IRS's view at all. I understand that Sirius has pointed to certain language in the instructions on the forms that seem to, as we stand here today, look like they are focusing also solely on the first aspect of limited partnership, which is limited liability. But viewed from the perspective of 1977, the instructions were first drafted in 1978, and for many years thereafter, at that time, limited liability and limited power or limited authority to act on the part of limited partners were inextricably intertwined with each other. Is there something in the instructions that talks about limited power to act? I've read them carefully multiple times, and I don't see anything in there from 1977 to today that would tell a taxpayer or a limited partner or general partner or anyone that limited power to act is part of the LP definition from the commission's perspective. But again, your honor, I think that one way of looking at this, one way of thinking about this, is that by referring to limited liability, by necessary implication, the instructions were also referring to this limited power to act because it was readily understood at that time in 1977, 1978, and for many years thereafter, that limited partners did not have any authority to act. That was part and parcel of the limited liability. The question is, why did somebody have limited liability in a limited partnership in that time period? And the answer is, because they were putting their trust in somebody else. The general partner was acting on behalf of the partnership, on behalf of the limited partners, who did not act. And so it makes sense that limited partners in that type of an arrangement didn't have general liability because they weren't conducting the business. They weren't taking the actions that may have led to liability of a general nature. In 1977, could you be both a general partner and a limited partner? I believe that's correct. Yes, your honor. And so the IRS thought it was important to explain to the person who was wearing two hats that the LP hat required limitation of liability, but didn't think it was necessary to explain and define in the instructions that when you're wearing the LP hat, that you have to also have a limited power to act. Seems odd, doesn't it? I don't think it seems odd, your honor, no, because the statute itself points out that what is accepted from self-employment tax here is the distributive share that a partner receives in their capacity as a limited partner. And so that's the only question that arises under this section. When was the first time the IRS imposed a deficiency this way? I don't know the answer to that question, your honor. I'm not sure. Can you point me, which I guess necessarily means you can't point me to an example prior to like, I don't know, 2015? Well, the Rankemeyer case was 2011, that was from the tax court, that was an LLC. Not a limited partnership, not an LLP, it was an LLC. That was the first pronouncement from the tax court on this issue, on the functional test that has now found its way into this case. I'm not aware of a case before that, your honor. But- When was the first LP case? You don't know? This is the first. This is the first LP case. Yes, your honor. Kind of amazing, isn't it? No, your honor, I don't think it's amazing because- This statute's older than I am. I realize I'm not like the oldest judge in America, but the statute's older than me and here we are. And your honor, this form of business entity has been changing and evolving for decades. And that's part of the problem that we have here. That's part of the reason why we've gotten to this point. Because in 1977, when this statute was first enacted, there was a clear understanding as to what a limited partnership was. At that time, limited liability companies didn't even exist. Limited liability partnerships didn't exist. And for sure, the entity that Sirius is, a limited liability, limited partnership, did not exist. That didn't come into existence for many years. And so, it's frankly a little bit strange to hear Sirius make this argument, because the business entity that they are did not exist in 1977. They exist today as a species of limited partnership in Delaware, only because Delaware chose at some later point to enact provisions that allowed that type of entity to exist. They are not a limited partnership as it would have been understood in 1977. And in fact, Sirius's definition here leads to some very strange results. At page 12 of their brief, Sirius says that the definition of a limited partner is a partner in a state limited partnership that has limited liability. Well, in the type of entity that Sirius is, even the general partner today has limited liability. So Sirius GP is Sirius's general partner here. It is a partner in a limited partnership in Delaware, and it enjoys limited liability under Delaware's laws. That's what a limited liability, a limited partnership is. So under Sirius's definition, even the general partner here gets the benefit of the exception from self-employment tax under the statute. Clearly not what Congress intended. And if that's correct, then there's virtually nothing left to it. And so, again, I think we agree. This court should focus on the common understanding of limited partnership as it was understood in 1977. And all of the factors that the Supreme Court has provided for the court to use in engaging in the statutory analysis point in the same direction. That absolutely, Congress understood that what it was legislating against was a backdrop of limited involvement by limited partners in the management and conduct of the business. And Congress told us that. And- So let me ask you, you agree that a person can be a limit or an entity could be a limited partner and a general partner? Do you agree with that? I think that that's technically possible.  Now you also used the term in the brief, a passive investor. Correct. Is there any distinction? Should we be making any kind of distinction between that and a limited partner? Or is that just terminology to help us understand? Well, I think that's terminology, Your Honor. That, I think that that's the terminology that the tax court has developed. And I think that that's the terminology that most fits with what Congress was trying to do when it enacted this specific exception. And again, because Congress told us what it was doing. Everybody agrees why this provision was created. In 1977, someone who was not a beneficiary of social security, someone who was not a participant in the social security system, social security insurance, could, by virtue of making a passive investment in a limited partnership, obtain coverage for social security purposes. Okay. Well, that gets to my next question, maybe. When does a person or entity know, if we agree with you, under federal law, when do they know when they pass from or get a critical mass of involvement that they are now no longer, for tax purposes, a limited partner, but will now be taxed as a general or active, not to create another term here, or active partner? You understand what I'm asking?  How would a person know that? Is there a dollar threshold or some type of percentage of activity? How would we gauge that? What test would the court, or the IRS for that matter, employ so that taxpayers around the country would understand that this is how they're going to be taxed? Yes, Your Honor. Two points to make there. I think the test has been being developed by the tax court in a series of cases, beginning with Rankemeyer, moving on to Hardy, Castiglioli, and then now this case. And I think the overarching statement of the test is when somebody is acting in the manner of a self-employed person. And then the tax court has developed a number of factors that it has looked at in order to reach that determination. And so those factors include things such as the nature of the business and its income. The nature of the partner's involvement in the business. The use of the partner's working time. The partner's power within the business. We sent you, Your Honors, a 28-J letter a few weeks ago with a new decision from the tax court called Denim Capital Management versus Commissioner. That was a 2024 case, which is another limited partnership case where the court determined that the partners were not acting in the manner of self-employed persons. And in that case, the tax court described the test as focusing on the efforts and responsibilities borne by the partner and whether his business arrangement with the partnership in question was more akin to one of employment or one of passive investment. In order to do that, the court instructed that we should review the sources of the partnership's income for the years at issue, the partner's role in generating that income, and the relationship between the partner's distributive shares and any capital contributions that they made to the partnership. And in that case in particular, the court focused on the following factors. The fact that the partners worked full time in the partnership's business. The fact that the partner's expertise and judgment were a significant draw for clients to that business. The fact that partners each exercised significant control over personnel decisions. The fact that guarantee payments were not designed to adequately compensate the partners for the value of their services. The fact that the business could not exist without the partners. Their directional and strategic guidance was necessary for the success of the enterprise. And the fact that the partners served integral roles in the partnership. And Your Honor, applying those factors here, there's no question that the partners in series also are acting in the manner of self-employed persons. That's an extraordinary list of factors. And as somebody who has to deal with multi-factor balancing tests for a living, it sort of blanches even me, because I'm not sure how in the world I would apply it. But I guess from a legal perspective, my principal question is, none of that's in the instructions, none of that's in the regs. None of that's obviously in the statute. Well, Your Honor, what is in the statute, and it's true, there are no regs interpreting the statute. The instructions do not carry the force of law. The statute is what we have here. And the statute instructs that only when somebody is acting as a limited partner are they entitled to the exclusion from self-employment income. And this is a facts and circumstances test that is designed to get at whether somebody is acting in the manner of a self-employed person, or acting in the manner of a limited partner, as that term was understood in 1977. And did I understand the very first, and I apologize if I misheard you.  But did I understand the very first part of your answer to Judge Englehart, that the tax court in developing this multi-factor balancing test, or totality test, or whatever you want to call it, is doing it across cases that include LPs, but also LLCs? Did I hear that correctly? Yes, Your Honor. So, what would be the statutory basis for that? I mean, as far as I know, the LLCs do not have a similar provision as 1402A13, right? This is, the LLCs are obviously different corporate entities, they have different provenance under state law. I assume they're, up until this case, I would have thought that an LLC and an LP would be taxed differently. Because obviously they have different treatment under the code. So why would you conflate the two for purposes of coming up with this standard? Your Honor, the common thread is that they're all treated as partnerships for federal income tax purposes. And LLCs treated as a partnership? It can be, it can be. I thought it was just that each of the members had sort of self, it was a pass-through entity, so each of the members would have sort of whatever their distribution from the LLC would be. Well, and pass-through entities are partnerships for persons of the Internal Revenue Code. Yes, and so I think that that's the common thread. Now, it may be a question as to whether this provision should apply to LLCs, to LLPs, or to limited liability, limited partnerships. There may be a question as to that. But that question as to whether it should apply to LLCs or those other entities really is not before the court today. Well, the question that is before the court is 1402A13, which is a statute passed by Congress. Congress decided to treat LPs differently. Now, maybe you could say, yeah, they did that in 1977, it's time to revisit that, and this is an unfair loophole. And I take your point that pass-through entities should be treated like pass-through entities, and so it shouldn't really matter what the state law label is. But Congress did it, and so it gets me a little bit of heartburn to say that we should just push them all together and treat them the same, not withstanding the statutory. No, I understand your Honor's point, of course. The only point that I'm making is that this case involves a limited partnership. And so it's not before the court this morning as to whether an LLC should be afforded the benefit of the exemption from self-employment tax. That's for another day. Perhaps when those cases come up, the arguments can be developed as to why or why the law shouldn't apply in that manner. But in getting back to the factors, I did want to point out your Honor expressed perhaps dismay at the number of factors that I listed from the recent Denham case. It's not necessarily the case that every one of those facts that the court identified there would necessarily need to be analyzed or applied in every single case. The point is that it's a facts and circumstances test, and those abound in the Internal Revenue Code. There are facts and circumstances tests all over the place. Hobby loss provisions come to mind where there's a, I think it's a nine part, a nine factor test comes to mind there. That's not unusual in Internal Revenue Code, because often tax depends upon facts, just as the decisions and cases depend upon the facts of those cases. And so it's often necessary to analyze the facts of any particular case. And here, I do think it's important to keep in mind, in this case, what we have, as was pointed out earlier this morning, partners who are the entity. This series would not exist without these partners. They are the product. It's a consulting company. They run the product lines. All of the income that comes in to Sirius is generated through the partner's efforts. And under the partnership agreements, these partners are obligated to work in the business. And so I think that that really does merit scrutiny here, because there is no way for an individual to purchase an interest, invest in Sirius, the entity, and simply receive a return on their capital. The only way to receive a distributive share in this company is to work full time in this company. You must agree that you will work full time and not work anywhere else. And if you do work somewhere else, then you're kicked out. And so in many ways, the distributive share here is similar to remuneration for services. The only way to get this distributive share is by working in the company. And I think that it's an important fact here. This is not about investment. This is about work. And that is the broader structure in which this entire thing rests. The entire dispute rests in that. This is about social security coverage. And Congress intended that people who work for pay should participate in the social security system. And that's what's happening here. They're working for pay, and they should participate in the social security system, just like everybody else who earns a wage does. And when Congress decided to create this exception, it was attempting to correct the problem on the other side of the coin. People who were passively investing in limited partnerships with no requirement to work in the entity, and they were obtaining social security coverage even though they weren't working. That was the ill that Congress was trying to cure. And it appears today, as limited partnerships have evolved over the years and the decades to this situation that we have now, completely divorced from what it was in 1977. Where a limited partner can work full time in the entity and still maintain limited partner status, but not pay into social security, the social security system, because of this exception. And it's simply, it's not what Congress intended when it created that exception. It's the opposite of what Congress intended. And so, I think putting this dispute within that greater context focuses the analysis as to what the term limited partner means. It doesn't exist in a vacuum. It exists in the context of what Congress was doing when it created the exception. I think all of the factors point in the same direction. A limited partner was somebody who did not act as serious as partners here are acting. We urge this court to affirm. Thank you, counsel. Rebuttal. May it please the court. I'd like to start by talking about Rankemeyer. The IRS did, that was the first case in which the IRS took the position with respect to a LLP, which is in fact a general partnership, not an LLC. However, it's not the first time the tax court addressed this issue. The first time the tax court addressed this issue is actually in two cases, Johnson and Perry, that are cited in the Managed Funds Association amicus brief. And in those cases, it involved a tax partnership, which is not a juridical entity, but it is taxed as a partnership. And the tax court said, no, you do not, passive investor partners, qualify for the exception in 1402A13, because limited partner is a state law creature. And you are not a state law limited partner. Now, I'd like to turn to the test that the IRS urges the court to adopt, which I understood to be acting in the manner of a self-employed person. Acting in the manner of a self-employed person is not the language in the statute. And the factors articulated by the IRS and the tax court are also not in the statute, and they are not in any regulations. Now, the IRS points to other provisions that may involve a facts and circumstances inquiry, and I think the IRS specifically pointed to the hobby loss provisions. The hobby loss rules involve facts and circumstances set forth in regulations. There are no regulations here. In fact, the one time the IRS tried to define limited partner regulations, Congress issued a moratorium because it would change the treatment of state law limited partners. I think here, what's important is we focus on the text of the statute. And the text of the statute makes clear that a limited partner could be both a general partner and a limited partner. Congress was aware of that. That general partner undoubtedly participated in the partnership, was active and controlled the partnership. But yet, Congress still exempted the limited partner's distributive share as such from self-employment tax. And Congress was also aware that limited partners could provide services by virtue of the guaranteed payment carve-out. It's the only time that Congress provided that self-employment taxes apply to services is when you receive a guaranteed payment for those services. I would also like to respond to the argument that here, the limited partners, their distributive share is their income from their efforts. It is not just their income from their efforts. There are other employees, Serious Solutions is a big consulting firm. I believe it had 200 employees at one time. And so the partnership's distributive share reflects the partnership's operations as a whole. And here, one year, despite limited partners actively participating in the partnership, the partnership had a loss. So despite all of those efforts, all they were allocated at the end of the day for their distributive share was a loss. With that, we urge the court to apply the ordinary meaning of the term limited partner, and I cede my remaining time. Thank you, counsel. The court will take this matter under advisement.